ALANSON E. MEAD, FOR WHOM HAS BEEN SUBSTITUTED HIS EXECUTOR, WILLIAM L. MEAD, PLAINTIFF-RESPONDENT, v. WILEY METHODIST EPISCOPAL CHURCH, DEFENDANT-APPELLANT.

ANNA BELLE KEMBLE, EXECUTRIX OF JOHN COURTNEY KEMBLE, DECEASED, FOR WHOM HAS BEEN SUBSTITUTED HOWARD R. KEMBLE, ADMINISTRATOR C. T. A. OF JOHN COURTNEY KEMBLE, DECEASED, PLAINTIFF-RESPONDENT, v. WILEY METHODIST EPISCOPAL CHURCH, DEFENDANT-APPELLANT.

Argued February 14, 1950—Decided March 13, 1950.

*Mr. Walter R. Carroll* argued the causes for the appellants (*Messrs. Carroll, Taylor & Bischoff,* attorneys).

*Mr. Walter S. Keown* argued the causes for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. These appeals are from judgments entered in favor of the plaintiffs against the defendant in the Law Division of the Superior Court, Camden County. While they were pending in the Appellate Division they were certified by this court on its own motion.

The gravamen of the actions, which were consolidated for the purpose of trial, was the negligent operation of an automobile station wagon owned by the defendant, and they have an unique and unfortunate background. The accident occurred on June 19, 1935, the complaints were filed on November 27th of that year. This is the fifth trial of the issues, the first of which was held in June, 1936, and in which the jury disagreed. The second trial, in October, 1936, again resulted in a disagreement. The third trial in November, 1937, and the fourth in May, 1944, resulted in verdicts for the plaintiffs which were set aside by the trial judges. The verdicts returned in the cases *sub judice* must again be set aside. In this State there is no statute or rule established by decisions limiting the number of times a verdict may be set aside for error.

During the fourteen years of litigation parties, witnesses and judges have died. While, by stipulation, the testimony of deceased witnesses at previous trials was preserved and made admissible in subsequent trials, at each succeeding one the events and circumstances surrounding the accident became more remote, witnesses' memories naturally faded, the opportunity for full cross-examination became curtailed and the chances of a just decision became correspondingly reduced.

On the day of the accident one Rose, an employee of the defendant, parked its station wagon in front of the Wiley

Mission at Arch and Third Streets in Camden and went inside. He left the keys in the car and there is evidence the motor was idling. While Rose was in the Mission one Joslin, admittedly drunk, got in the station wagon. Shortly thereafter the automobile was driven from where it had been parked diagonally across the street where it became entangled with a heavy "No Parking" sign which weighed from fifty to seventy-five pounds and was embedded in a concrete base. With this sign entangled with the front bumper the station wagon was backed away from the curb in such a violent manner the sign was shaken loose and the station wagon was then driven forward at a high rate of speed zigzagging and swerving from side to side. It made a violent swerve, crossed the street, climbed the curb and struck Mr. Mead and Mr. Kemble, who were on the sidewalk. It then continued in an erratic, highly reckless course until it struck another car.

Plaintiffs claim Rose operated the car, having entered it and climbed over Joslin who was lying on the front seat, while defendant asserts Joslin in effect stole the car, was its driver on the wild ride, and that Rose did not emerge from the building until after the accident.

The pretrial order, filed November 19, 1948, set forth that Mr. Mead died April 15, 1940, and that William L. Mead has been substituted as party plaintiff; that no claim is made that Mr. Mead's death was the result of the injuries received in the accident; that Anna Belle Kemble, executrix, was the widow of Mr. Kemble, who was killed in the accident and that Anna Belle Kemble died and the substituting executor will be made a party plaintiff in her stead. There then followed this significant and important paragraph "The only issue in the case, outside of the question of damages is whether or not the operator of the defendant's station wagon was an agent, servant or employee of the defendant. Plaintiffs contend that he was and the defendant contends that the vehicle was taken by one Joslin without the authority or knowledge of the defendant." A further paragraph of the order reads "There will be no question about the negligence, proximate cause or contributory negligence."

Not only was the question of whether Rose or Joslin was driving the station wagon the single issue to be submitted to the jury under the pretrial order, but both counsel for the plaintiffs and for the defendant in their openings to the jury stressed the fact that this was the only issue. They again did this in the briefs submitted to us and the arguments made here.

Notwithstanding all this the trial court in its charge to the jury submitted other extraneous issues for its consideration. It charged the provisions of *R. S.* 39:4–137:

"No person having control or charge of a motor vehicle shall allow it to stand on a highway unattended without first effectively setting the brakes thereon and stopping the motor thereof, and, when standing on a grade, without turning the wheels thereof to the curb or side of the highway."

And then said:

"The Court leaves that factor in this case about the motor running, at least, for your consideration. If the law was violated, is it negligence that is imputable to the defendant in this case? Not *per se* and in and of itself, but, however, it is a factor for you to consider, if it was such, if it has been established. Leaving a car motor running is that which is prohibited by law, but is it negligence in and of itself? I shall say no to you."

It further charged and left with the jury for its consideration the question as to whether the defendant had employed an incompetent driver through whose incompetence the injuries to Mr. Mead and Mr. Kemble resulted.

Since the theory of plaintiffs' case was that Rose, defendant's employee, was driving the station wagon it was immaterial that the statute charged had been violated. It is self evident, on such a theory, the fact that Rose left the engine idling when he went into the Mission could not have been the cause, proximate or otherwise, of the injuries. On plaintiffs' theory such cause could only have been the negligent operation of the station wagon by Rose. Under the charge as given the jury might well have concluded that no matter who was driving the car Rose had been negligent in leaving it standing on the highway with the motor running and be-

cause of this the defendant was negligent and responsible for the injuries resulting from the accident.

The allegation respecting the Traffic Act violation was not contained in the original complaints filed in the causes but were contained in amended complaints setting up third counts and filed previous to the fourth trial on May 15, 1944. When the plaintiffs rested at that trial the defendant's motion for a nonsuit on the third counts was granted and judgments of nonsuits were entered thereon. No motion was thereafter made to further amend the original complaints or to revive those third counts. Those judgments of nonsuit were a finality as far as the issues there raised are concerned. *Schuyler v. Mills,* 28 *N. J. L.* 137 (*Sup. Ct.* 1859); *Beckett v. Stone,* 60 *N. J. L.* 23 (*Sup. Ct.* 1896); *Standard Baking v. Hi-Grade Coal,* 115 *N. J. L.* 265 (*Sup. Ct.* 1935). While the nonsuit was not a bar to another suit for the same cause of action between the same parties, this is not another suit but the fifth trial of the same suit. The result of the nonsuits on the third counts at the fourth trial was to end the suits so far as the issues raised therein were concerned and there was error in a subsequent trial in submitting to the jury issues raised only by them and not litigated by the parties. *Excelsior Elec. Co. v. Sweet,* 59 *N. J. L.* 441 (*E. & A.* 1896); *Garibaldi v. Rubenstein,* 99 *N. J. L.* 223 (*E. & A.* 1923); *Dudley Co. v. Aron, etc.,* 106 *N. J. L.* 100 (*E. & A.* 1929); *Young v. Crescente,* 132 *N. J. L.* 223 (*E. & A.* 1944).

Objection was made to the charge as it dealt with this issue on the ground that it was precluded by the pretrial order and was not raised by the pleadings. Regarding the objection the court said "I understand it clearly." The court did not withdraw or correct what had been charged but in fact charged further and more emphatically on the very point covered by the objection. Counsel is not required to continuously object or take exception to a charge he deems erroneous after having made known his objection and clearly stating the grounds therefor. There was full compliance with *Rule* 3:46.

The trial court further erroneously submitted to the jury the question as to whether or not the defendant had

employed an incompetent driver. There was an utter lack of proof in the record of Rose's incompetency previous to this accident or that such incompetency, if there was such, was within the knowledge of the defendant. The owner of an automobile may be liable for injury from the operation of that car placed in the hands of one he knows or ought reasonably to know is incompetent to operate it so that the owner ought reasonably to anticipate that in its operation injury will be done to others. *Wilson v. Brauer,* 97 *N. J. L.* 482 (*E. & A.* 1922); *Patterson v. Surpless,* 107 *N. J. L.* 305 (*E. & A.* 1930); *Greeley v. Cunningham et al.,* 116 *Conn.* 515, 165 *A.* 678. This issue was also *dehors* the pretrial order. Negligence being admitted it was immaterial whether the operator of the station wagon was a competent or incompetent driver.

To return to the pretrial order, its relation to and its effect upon the conduct of the trial. *Rule* 3 :16, as it existed at the time of the trial of these cases and before its amendment on December 19, 1949, provided that the order recite the action taken as to any matters considered, that it limits the issue for trial to those not disposed of therein and that it controls the subsequent cause of action, unless modified at the trial to prevent manifest injustice. There was no modification of the instant order. This court in *Jenkins v. Devine Foods, Inc.,* 3 *N. J.* 450 (*Sup. Ct.* 1950), gave a literal interpretation to that rule and held that where a pretrial order defining the issues is not modified before or during the trial the order controlled the course of the trial and that a court should give no instructions to a jury which would nullify the effect of a pretrial order or be inconsistent with the issues as framed in such an order. Both of these precepts were violated. As the case must be retried conceivably a new pretrial order may be entered into.

A large portion of the briefs and oral arguments were devoted to appellant's point that the verdicts were against the weight of the evidence. As a *venire de novo* will issue we find it unnecessary to pass judgment thereon.

The judgments are reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and ACKERSON—6.

*For affirmance*—None.