13 N.J. Super. 105 (1951)
80 A.2d 207
HENSGEN BROS., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES GRIP, OTHERWISE KNOWN AS KARL AUGUST GRIP, OTHERWISE KNOWN AS CHARLES GRIBUL AND WALLY EMILIA GRIP, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1951.
Decided April 18, 1951.
*107 Before Judges JACOBS, EASTWOOD and BIGELOW.
*108 Mr. William C. Gotshalk argued the cause for the plaintiff-respondent.
Mr. George G. Tartar argued the cause for the defendants-appellants.
The opinion of the court was delivered by EASTWOOD, J.A.D.
This case illustrates the well-known risks inherent in oral contracts involving an expenditure of thousands of dollars. However, it demonstrates that there are persons still willing to undertake and assume that risk.
The oral contract entered into provided for the construction of a building to be used as a combination washroom and comfort station by occupants of trailers at the trailer camp of the defendants and a supplemental contract for work to include sidewalks, fire hydrants, incinerator, water lines with outlets, waste water or sewer lines with outlets, etc. The plaintiff asserts that payment was to be on the basis of cost plus commissions, totalling $37,541.97, on account of which defendants paid $26,500, leaving a balance due plaintiff of $11,041.97. The defendants assert that the plaintiff agreed to perform the necessary work and furnish the necessary materials for both the main and supplemental contracts for the sum of $26,500, which they fully paid to plaintiff. The defendants filed a counterclaim asserting in the first count thereof that the plaintiff agreed to erect "a building which was to contain a comfort station, washroom, etc., for the sum of twenty thousand ($20,000.00) dollars, which price was to include the furnishing of a proper and adequate water supply and sewer system, water mains, electrical outlets, heat units and plumbing, etc.;" that the plaintiff had breached its agreement with the defendants by using incompetent and unskilled labor and furnishing defective and substandard materials. And in the second count, which dealt with the supplemental contract for the "laying of small cement sidewalks, electrical outlets, water mains, fire hydrants, electric parts and assorted boxes, fabricating an incinerator, furnishing *109 backboard to the slop sink, etc.," asserted that the "plaintiff breached its agreement with the defendants in that it did not complete the aforesaid extras in a good and workmanlike manner; did not and has not performed certain of the extras, although the plaintiff has been fully paid therefore"; seeking judgment in the sum of $10,000 on the first count to compensate defendants for expenditures necessary to "complete, re-model, repair and re-alter the aforesaid building" and $5,000 on the second count "to complete the extras which should have been performed and completed by the plaintiff." The jury returned a verdict in favor of the plaintiff against the defendants in the sum of $8,011.82. It is from this judgment that defendants appeal.
The defendants argue several grounds for a reversal of the judgment against them. We deem it unnecessary to discuss and decide all of the grounds advanced by defendants. They resolve themselves into a contention that the trial judge erred in striking the testimony of two expert witnesses, Urquhart Ward and James De Genova, whose testimony defendants contend was properly admissible to support the allegations of the second count of the counterclaim that certain pipe known as Orangeburg pipe used in connection with the waste water line, was improper and defective material, in that it did not conform to the plumbing code of the City of Camden and that it would cost approximately the sum of $3,000 to replace it; and, further, that the court erred in charging the jury to disregard that portion of the counterclaim which concerned the "Orangeburg pipe."
It is interesting to note that at the trial when the witness Urquhart Ward, who was plumbing inspector of the City of Camden, testified that the Orangeburg pipe was not permissible for use in a waste water line under the Camden City code and when the other expert witness, De Genova, testified as to the cost of replacing the Orangeburg pipe with pipe that would conform to the Camden City plumbing code, their testimony was admitted without challenge by the plaintiff. However, at the end of the defendants' case, the plaintiff *110 moved that the testimony of these two witnesses be stricken, on the ground that the pre-trial order did not specify nor comprehend any claim by defendants of defective material in the waste water line laid by the plaintiff. This motion was denied, whereupon plaintiff proceeded to offer in rebuttal the testimony of Herman E. Hensgen, an official of the plaintiff-corporation, who testified that the oral agreement entered into by the parties specified the use of Orangeburg pipe for the waste water lines; that defendant, Charles Grip, was present and aided in the supervision of the laying of the Orangeburg pipe; that Grip never questioned the type of pipe that was being used and, in fact, Grip did not at any time, until the institution of this action, make any complaint that the Orangeburg pipe was defective and improper material for the purpose for which it was installed. It is significant that defendant, Charles Grip, did not return to the stand later and deny this testimony of the witness, Hensgen. The plaintiff contends that the counterclaim and the pre-trial order having failed to assert any such claim by the plaintiff, the defendants had, therefore, limited their claims and were precluded from introducing evidence to establish damages with respect to the Orangeburg pipe. The defendants contend that Rule 3:16, prescribing pre-trial procedure in effect at the time of the entering of the pre-trial order, should control the trial of the action, rather than the rule, as amended December 19, 1949, as contended by plaintiff. It seems to us that it is immaterial, so far as this issue is concerned, whether the rule in effect at the time of the entering of the pre-trial order or the amended rule is controlling. Assuming, arguendo, that the amended Rule 3:16 is applicable, an examination of defendants' counterclaim and the pre-trial order clearly evinces that it is the second count of the counterclaim and the statement with reference thereto in the pre-trial order that must be relied upon by the defendants if they are to succeed in their contention. It will be helpful to consider the allegations in the second count of the counterclaim and the pre-trial order. Defendants assert therein that the oral agreement for the extras, *111 which include the waste water lines in question, was breached by plaintiff "in that it did not complete the extras aforesaid in a good and workmanlike manner; did not and has not performed certain of the extras, although the plaintiff has been fully paid therefor." That portion of the pre-trial order which is obviously applicable to the second count of the counterclaim asserts "that the cesspools and the fire hydrants were not provided and that the sidewalks and drainage outlets were done in a poor and unworkmanlike manner." In the briefs of the respective parties and at the oral argument of this appeal, it clearly appears that the issue as to whether defendants were entitled to assert a claim for damages with respect to the Orangeburg pipe and introduce supporting evidence necessarily stems from a construction of the pre-trial order and the second count of the complaint and particularly that part of the pre-trial order which states that the "drainage outlets were done in a poor and unworkmanlike manner" (italics ours). The dispute on this issue between the parties centered around the question as to whether "drainage outlets" was sufficiently broad to include the pipe lines which conveyed the waste water from the trailers to either cesspools or a nearby creek. The defendants contend that these words are sufficiently broad to support the admission of the challenged testimony; that, if the pipe lines were not so included in that term, there would have been no outlet at all for the waste water sewerage. The plaintiff contends that the "drainage outlets" could not under any construction thereof be considered as the waste water pipe lines; that sewer outlets are the belltraps only and did not include the pipe line as well.
In considering the objective of the pre-trial rule, Judge Bolitho Laws, who has had a wide experience with pre-trial conferences and the subsequent course of action thereunder, in addressing the American Bar Association, stated:
"One of the vital, if not the outstanding, advantages of pretrial procedure is to take the trial of actions out of the realm of surprise and maneuvering, whereby an unwary counsel might see the just cause of his client lost. It may be romantic and charming to watch *112 the skillful trial lawyer as he lies in wait to pounce upon an uninformed and less skillful counsel, but the results frequently are not just." 10 Ford. L. Rev. 76.
Cf. Morsey v. Erle, 4 N.J. 276 (1950). Our Supreme Court, in several opinions, has commented upon the effect of Rule 3:16. In the case of Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950), Mr. Justice Case, in speaking for the court, stated at p. 458:
"Our Rule 3:16 was framed upon Federal Rule 16; but our rule makes the pre-trial conference mandatory whereas the federal rule leaves it within the discretion of the court. Each rule states that one of the objectives is the simplification of the issues. The comments published with the widely-circulated tentative draft of our rules preliminary to final redraft and adoption noted that `the pre-trial order not only recites the action taken at the conference, but limits the issues,' citing in support Burton v. Weyerhaeuser Timber Co., D.C., 1 F.R.D. 571, 4 F.R.S. 319, and that comment reflects our view. `The purpose of the pre-trial conference is to simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at the trial.' McDonald v. Bowles, 152 F.2d 741 (Circ. Ct. of Appeals, Ninth Circ. 1945). A court should give no instruction to the jury which would nullify the effect of a pre-trial order or be inconsistent with the issues as framed in such order. Cf. Bryant v. Phoenix Bridge Co., 43 Fed. Supp. 162 (Dist. Ct., District of Maine, S.D., 1942). The participants in a pre-trial conference should adhere to the spirit of that procedure and be held to waive questions not there presented. Frank v. Giesy, 117 F.2d 122 (Circ. Ct. of Appeals, 9th Circ., 1941). Modification may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection. Full effect was not given to the pre-trial order."
and at p. 459, made the further statement:
"It is to be noted that the trial was had prior to the changes in Rule 3:16, accomplished by the amendment promulgated December 19, 1949, which somewhat altered the exclusive control placed in the order over the subsequent course of action and which have not been evaluated herein. In order to be fair to both sides the trial should have been conducted in accordance with the rule currently in effect at the time of the trial. As that was not done the judgment ought not to stand. In view of the novelty of the practice and the absence of an earlier construction of the rule, we think that the case should not end here but should go back for retrial." *113 In the case of Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950), Mr. Justice Oliphant, speaking for the court, stated at p. 206:
"To return to the pretrial order, its relation to and its effect upon the conduct of the trial. Rule 3:16, as it existed at the time of the trial of these cases and before its amendment on December 19, 1949, provided that the order recite the action taken as to any matters considered, that it limits the issue for trial to those not disposed of therein and that it controls the subsequent cause of action, unless modified at the trial to prevent manifest injustice. There was no modification of the instant order. This court in Jenkins v. Devine Foods, Inc., 3 N.J. 450 (Sup. Ct. 1950), gave a literal interpretation to that rule and held that where a pretrial order defining the issues is not modified before or during the trial the order controlled the course of the trial and that a court should give no instructions to a jury which would nullify the effect of a pretrial order or be inconsistent with the issues as framed in such an order. Both of these precepts were violated. As the case must be retried conceivably a new pretrial order may be entered into."
The application to strike the testimony of these two witnesses was not timely made and its allowance was erroneous. At no time when these witnesses were testifying was any objection thereto made by the plaintiff. The first time objection was made thereto was at the end of the defendant's case, when plaintiff made its application to strike the testimony on the ground that it related to matters that were not within the confines of the pre-trial order. The motion at that time was denied and was not granted until the plaintiff renewed it at the conclusion of the entire case. In Beam v. Kent, 3 N.J. 210 (1949), Mr. Justice Wachenfeld, speaking for the Supreme Court, stated at p. 216:
"There is another reason, not advanced by either party, why there should be an affirmance. The record shows the objection to Dr. Roter's testimony was not timely since the hearsay nature of it was revealed on direct examination and the motion to strike was not made until the end of the cross-examination.
`The rule is established that counsel cannot take the chance of testimony making in his favor, and if it happens to be adverse, then interpose his objection. There is nothing to show that the defence here was not apprised of the point upon which the witness was about to speak, before his testimony relative to the sale to *114 himself was delivered. The testimony being so in without objection, it cannot be said that the court erred in not striking it out.' Clark v. State, 47 N.J.L. 556 (E. & A. 1885).
In Willett v. Morse, 71 N.J.L. 104 (Sup. Ct. 1904), the court, citing the rule, said:
`It is too late to make an objection to the admission of testimony after it has all been given and is in the record. Objections must be timely, and must be made to the question.'"
The issue with respect to the Orangeburg pipe was not asserted by the defendants either in the counterclaim or in the pre-trial order. The term "drainage outlets" was not sufficiently specific to inform plaintiff as to the asserted claim. Nor do we find the term broad enough, in its commonly accepted meaning, to include the pipe lines. It is significant that the language used by the defendants in the first count of the counterclaim asserts that "the plaintiff breached its said agreement with said defendants by using defective and substandard materials and by using incompetent and unskilled labor" (italics ours), and with respect thereto the pre-trial order states "that the work done by the plaintiff under the agreement was not completed in a good and workmanlike manner, and that certain materials furnished thereunder were not of a quality fixed by provisions of said agreement." A comparison of the language used with respect to defendants' claim under the first count of the counterclaim and the pre-trial order, with that used in the second count of the counterclaim and the pre-trial order, convinces us that defendants did not assert any claim for damages for the use of defective or improper material in the performance of the supplemental contract. This is apparent when we consider what the defendants state in the second count of their counterclaim, to wit: that plaintiff "did not complete the aforesaid extras in a good and workmanlike manner; did not and has not performed certain of the extras, although the plaintiff has been fully paid therefor" and the pre-trial order, stating: "that the cesspools and fire hydrants were not provided and that the sidewalks and drainage outlets were done in a poor and unworkmanlike manner." It is evident that the first count of the defendants' *115 counterclaim which dealt with the contract for the erection of a combination washroom and comfort station building, clearly asserted a claim for damages for the use of defective and improper materials. However, under the defendants' claim, as stated in both the second count of the counterclaim and the pre-trial order, no claim was made for defective materials. The allegations were that the work was done in a poor and unworkmanlike manner. We are impressed with the distinction that the defendants themselves make in their respective claims for damages under the first and second counts. Rule 3:16 and the pleadings as ordered to be amended controls the subsequent course of action, unless modified at the trial to prevent manifest injustice. One of the objectives of this rule is the simplification of the issues. The participants in a pre-trial conference should adhere to the spirit of that procedure and be held to waive questions not there presented. Jenkins v. Devine Foods, Inc., supra. Although the issue with respect to the Orangeburg pipe was bitterly contested at the trial, the defendants made no application to the court for modification of the pre-trial order to permit proof as to their claim. Not having been modified, we are convinced that the defendants were not entitled to assert or introduce evidence of this claim for damages. "Modification may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection." Jenkins v. Devine Foods, Inc., supra. In this connection it is also significant that the defendants failed to take the stand to refute or deny the testimony of Herman E. Hensgen, that Orangeburg pipe was specifically agreed upon by the parties; that the defendant, Charles Grip, was present when it was laid, aided in the supervision of that work and used the pipe for a period of approximately 18 months subsequent to the completion of the contract without making any complaint as to its defectiveness. We are satisfied that for the reasons hereinbefore stated, the defendants suffered no manifest harm nor did any injustice result from the court's erroneous exclusion of the testimony in question.
*116 The defendants' criticism of the court's charge is not properly before us, in view of the fact that defendants failed to object thereto. Tornaquindici v. Bocchicchio, 11 N.J. Super. 179 (App. Div. 1951).
The judgment of the Law Division is affirmed, with costs.