27 N.J. Super. 461 (1953)
99 A.2d 541
GERTRUDE SCHRACK SYLE, EXECUTRIX OF THE ESTATE OF EMILIE BLANCHE CRAIG, DECEASED, PLAINTIFF-APPELLANT,
v.
PAULINE J. FREEDLEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1953.
Decided October 6, 1953.
*463 Before Judges EASTWOOD, JAYNE and FRANCIS.
*464 Mr. John Henry Reiners, Jr., argued the cause for appellant.
Mr. W. Louis Bossle argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
After the death of Emilie Blanche Craig on June 27, 1951 the plaintiff in the pursuit of her service as executrix of the estate discovered in the safe deposit box of the decedent at the Haddonfield National Bank two acknowledgments of indebtedness signed by the defendant, of which the following are copies:
"June 1, 1950
Dear Blanch,
This is to acknowledge the loan of ($2000.00) Two thousand dollars to me on June 1, 1950 for which the interest at six percent has been paid ($120.00) one hundred and twenty dollars has been paid until next June 1, 1951 when it is again due.
PAULINE J. FREEDLEY"

* * * * * * * *
"Dear Blanch,
This is to acknowledge the loan of $800 to me on Sept. 15, 1950. To be paid back at $150.00 a month, plus 6% interest.
PAULINE J. FREEDLEY"
The box also contained two checks of the defendant payable to plaintiff's testatrix, the one in the amount of $1,000 dated February 3, 1951, and the other for $150 bearing date March 31, 1951. Still another check of the defendant payable to plaintiff's testatrix in the sum of $150 dated March 11, 1950 was found among the decedent's personal effects. The $1,000 check and the check for $150 dated March 31, 1951, upon presentation to the bank by the plaintiff, were honored, but the check for $150 dated March 11, 1950 seems to have been dishonored because of insufficient funds in the account of the defendant. The plaintiff applied the $1,150 to the credit of the loan of $2,000 evidenced by the acknowledgment of June 1, 1950.
The plaintiff also acquired information that the defendant was in possession of certain articles of flat silver and some pieces of furniture previously owned by the decedent.
*465 The existence, at the time of the death of the testatrix, of the previously acknowledged indebtedness of $2,800 and the ownership at that time of the chattels were disputatious subjects between the defendant and the representative of the decedent's estate, hence this litigation in which the executrix sought judgment against the defendant for the balance of the alleged indebtedness and for the possession of the designated chattels. Summarily explained, the defendant averred the extinguishment of the debt upon the death of the testatrix and her acquisition of the ownership of the chattels by the inter vivos gift of the testatrix. By way of a counterclaim broadened by the pretrial order the defendant may be said to have demanded of the plaintiff the repayment of the proceeds of the two checks.
The trial terminated in the return of a verdict by the jury in favor of the defendant and against the plaintiff for the return to the defendant of the $1,150 and denied to the plaintiff a recovery of the personal property claimed by the estate. The plaintiff's application for a new trial was refused but the judgment in favor of the defendant was reduced to $1,130, from which final judgment the plaintiff now appeals.
The point predominantly emphasized by counsel for the plaintiff at the trial and perpetuated here is that the defendant's proofs were manifestly incongruous with the counterclaim and pertinent statements of the pretrial order.
It must be acknowledged that the pretrial order controlled the subsequent course of action unless modified by direction of the court at the trial to prevent manifest injustice. Rule 3:16; R.R. 4:29-1; Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950); Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950); Anderson v. Modica, 4 N.J. 383 (1950); Carlson v. Hannah, 6 N.J. 202, 215 (1951); Hensgen Bros., Inc. v. Grip, 13 N.J. Super. 105, 115 (App. Div. 1951).
We are asked, however, to look behind the pretrial order where we will observe that in the first count of the counterclaim the defendant alleged that the decedent "told defendant *466 that she intended changing her will to provide for the cancellation of said indebtedness * * *" and that the decedent "failed in her promise to give a legacy to defendant cancelling said debt and thereby breached her promise to the defendant."
Counsel for the defendant explains that by reason of the significant divergency between the decedent's statement to the defendant concerning the proposed cancellation of the debt and the decedent's agreement with the defendant's husband concerning it, "the defendant was in a dilemma in so far as the proper pleading of her (the defendant's) defense was concerned"; that Judge Lloyd, who conducted the pretrial conference, was informed of the state of the available evidence and in consequence the pretrial order was phrased as follows:
"Defendant admits receipt of the moneys, effects claimed by the plaintiff. Defendant denies there is anything due to the plaintiff, alleges there was a promise by the plaintiff decedent to cancel all said indebtedness and made her a gift of the personal property, which she has in her possession, during her lifetime. The promise was not fulfilled and defendant seeks enforcement of same. This is in the nature of a counterclaim."
It eventuated that the defendant was not privileged to testify to any transaction with or statement by the deceased testatrix and the only testimony supporting the alleged cancellation of the indebtedness came from the defendant's husband who swore that on an occasion in October or November which he thought was in the year 1950, he had the following conversation with the decedent:
"Q. What did she say to you?
A. She said that the debt my wife owed her was and is cancelled.
Q. What else did she say?
A. She said that the continuing care that my wife had given her and her mother over the years, when nobody else she asked, and she asked several others, could or would give that care, had enabled her to finish her life in the way that she wished to do.

* * * * * * * *
*467 A. She said that the debt was cancelled, but that she would like me to guarantee that she would not run out of funds before she died, in other words, I was to pick up ____ (interrupted).

* * * * * * * *
Q. Repeat again what she said to you about guaranteeing the debt.
A. `In case I run out of money before I die, I want you to make up such funds as I need up to the $2,800 which is the extent of the cancelled obligation.'
Q. What did you tell her?
A. I told her I would.

* * * * * * * *
Q. Now, did she state when this debt was to be cancelled?
A. She said as of that time.
Q. Did she also mention another debt of $150?
A. No, sir."
True, there was no evidence whatever of any promise by the decedent to effectuate a cancellation of the defendant's indebtedness by her last will or to bequeath an equivalent legacy to the defendant. The trial judge was of the opinion that the theme of the husband's testimony was within the embracive import and diction of the pretrial order and that a direction to alter or more specifically amplify the pretrial order at the trial was unnecessary.
It is not to be implied from our conception and decision of the present appeal that we intend to condone any material departure from the obedience to the rule that the evidence at the trial must be confined to the issues ultimately expounded and demarcated by the pretrial order which now supersedes the pleadings where inconsistent therewith. R.R. 4:29-1.
Our function in the administration of justice is essentially appellate and remedial. Where counsel have, as here, chosen to proceed to trial in pursuance of a pretrial order composed in a structural style sufficiently capacious to embrace the evidence introduced, our appellate review in that particular bears upon whether by reason of the indefinite phraseology of the pretrial order the appellant has suffered a manifest injustice.
If, in the present case, the plaintiff's counsel was unexpectedly and prejudicially misled or surprised by the *468 evidence introduced to prove "a promise by the plaintiff's decedent to cancel all said indebtedness," he might well have applied to the trial judge for relief. No such application was made. Moreover it is not made evident that a new trial would constitute other than a resubmission of the same controversial issues to another jury for determination on the same evidence. Judgments are not reversed merely to hear the record played over again.
It is also contended that the verdict is discordant with the weight of the credible evidence. It is preeminently the mission of the jury to resolve the credibility of the testimony and to determine the facts. A verdict should not be overthrown merely because the jury might rationally have decided otherwise, Knickerbocker Ice Co. v. Anderson, 31 N.J.L. 333 (Sup. Ct. 1865); Queen v. Jennings, 93 N.J.L. 353 (Sup. Ct. 1919), or merely because we might have reached a different conclusion. Faux v. Willett, 69 N.J.L. 52 (Sup. Ct. 1903).
Our appellate power to nullify a verdict of the jury is not a boundless and illimitable one. We are empowered to interfere where it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice, or passion. R.R. 1:5-3.
Counsel for the appellant characterizes the testimony of the defendant's husband as unbelievable and as a matter of law evidentially inadequate without corroboration. We are not aware of any such rule of law in a case of this nature. We may pause to remark that whether true or not, the husband's testimony was exceedingly useful to the defendant. The jury undoubtedly realized that his tongue was spiced with some personal interest in the outcome of the case, yet upon deliberation they resolved his story to be essentially worthy of credence.
We know that every one loves the truth but not every one tells it. As triers of the facts in a court, the duty devolves upon the jurors to say who does and who does not.
In our survey of the record before us we fail to discover any evidence controverting the allegations of the third count *469 of the plaintiff's complaint relating to the recovery of the amount due on the check in the sum of $150 dated March 11, 1950. At the pretrial conference it was stipulated by counsel that "A prima facie case is made out under the first three counts." The defendant was apparently indebted to the plaintiff in the amount due and payable on that check. The amount of the defendant's final judgment should be proportionately adjusted.
Except as herein modified, the judgment in favor of the defendant is affirmed.