53 N.J. Super. 41 (1958)
146 A.2d 515
PETER PARADOSSI, PLAINTIFF-RESPONDENT,
v.
REINAUER BROTHERS OIL COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided November 28, 1958.
*43 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. John W. Griggs argued the cause for defendant-appellant (Messrs. Morrison, Lloyd & Griggs, attorneys).
Mr. Nelson G. Gross argued the cause for plaintiff-respondent (Mr. Mortimer L. Mahler, attorney).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal defendant challenges the propriety of a judgment against it for $18,250 entered in favor of plaintiff, its tenant, in the Superior Court, Law *44 Division, upon a jury verdict in that sum. The action was based on defendant's alleged violation of the terms of a written lease.
Defendant is the owner of premises located on the southwesterly side of Route 17, Bergen County, New Jersey, which in 1948 it used in part for the operation of a gas station. In that year defendant leased a portion of the premises to plaintiff for a period of ten years at an agreed monthly rental of $50. Plaintiff utilized the demised property for the operation of a diner which he purchased from defendant at the time of the execution of the lease. The diner was located southeasterly of defendant's gas station with the nearest point of the dining car about 85 feet from the gas station. The leased premises were described as follows:
"* * * the land and premises on Route 17 in the Township of Mahwah, Bergen County, New Jersey upon which there is located a diner this day sold by the Landlord to the Tenant. In addition to the area upon which said diner is located, the leased premises shall extend for a distance of 40 feet on the north and south sides of said diner and approximately 130 feet from Route 17 to a cyclone fence in the rear. This makes the frontage on Route 17 approximately 118 feet; * * *"
Paragraph "Twenty-Fourth" of the lease provided: "Both the Landlord and Tenant shall have the right of ingress and egress across the driveway adjoining the diner." The driveway referred to was not further identified in the lease. Its true location constituted one of the major issues at the trial.
In July 1954 the old diner was replaced by a new one purchased by plaintiff for approximately $80,000. A new site for the new diner, southeasterly of the location of the old diner was agreed upon by the parties. It was conceded that the new diner so located extended beyond the demised premises in a southeasterly direction and encroached upon defendant's retained land.
In January 1957 plaintiff, exercising an option contained in the lease, renewed it for an additional ten-year *45 period. There was no written modification or alteration of the lease at any time to reflect the changed location of the diner.
In March 1957 defendant demolished its gas station and erected a new one, so located that its northeasterly corner encroached for a few feet upon the northwesterly portion of the premises previously demised to plaintiff. The defendant's right to do so and whether, in addition to encroaching on the demised premises, the gasoline station encroached on and interfered with plaintiff's aforesaid driveway rights, were major issues. It was conceded that there was no physical delineation of a driveway on the ground. The area, in dispute, which plaintiff claimed was part of the driveway, was beyond the northwesterly boundary of the demised premises.
Plaintiff's complaint contained the following allegation:
"Notwithstanding the terms and conditions of said written lease, as therein provided, the Defendant-Corporation has breached and violated the terms, covenants, and conditions therein contained, and has erected and constructed a gasoline station across and on said driveway, and at a height so to obstruct the view of Plaintiff's diner on said premises, and is depriving the Plaintiff of his patrons' and customers' right of ingress and egress across said driveway referred to in said lease, and has terminated and destroyed the Plaintiff's right of ingress and egress across said driveway as provided in said lease."
The complaint did not contain any allegation that the new gas station encroached on the demised premises.
The answer denied the allegations of the complaint and in addition raised the defense that the lease was terminated by act of the parties and by operation of law as a consequence of the 1954 location of the new diner partially outside the demised premises.
Plaintiff's contentions set forth in the pretrial order included the following:
"Said lease provided amongst other things that both the plf & deft, as landlord & tenant, should have the right of egress & ingress across the driveway, adjoining the diner which was purchased by plf from deft, & which right of ingress & egress was created for the benefit *46 of plf as tenant & his customers in trade in connection with the operation of the dining car.
Said right of way & the egress & ingress across said driveway was expressly & specifically established between plf & deft as tenant & landlord. Deft corp. breached the terms of the lease & erected & constructed a gasoline station across and on said driveway & deprives plf of rights of ingress & egress as provided in said lease."
The pretrial order made no reference to the claimed deprivation of view of the diner by prospective customers of plaintiff motoring on the highway. Neither did it contain any allegation that the new gas station encroached upon the demised premises. Paragraph 7 of the pretrial order described the legal issues as "breach of contract & terms of lease."
At the trial defendant maintained that the location of the driveway as contemplated by the parties was part of the macadamized area extending across the front of defendant's land and affording access to the gas station and diner from Route 17. Plaintiff asserted that the driveway's true location, in addition to the area described by the defendant, included the area between the northwesterly boundary of the demised premises and the old gasoline station, upon part of which area the new station had been erected in claimed violation of plaintiff's rights under the aforesaid lease. Defendant contended that a proper interpretation of paragraph "Twenty-Fourth" negated any claim that the driveway included the area northwest of the boundary of the demised premises; that the old "diner" referred to in said paragraph meant the building itself and not the boundaries of the demised premises. Defendant contended also that the area referred to by plaintiff was for the parking and servicing of trucks of defendant's customers.
Plaintiff produced two expert witnesses. His accountant testified that the profit from the operation of the diner decreased by approximately one-third during the first year after the construction of the new gasoline station. Over objection a real estate expert testified that the diner had a value of approximately $85,000 prior to the erection of *47 the new gasoline station and at the time of trial its value was approximately $40,000. On cross-examination he stated that his opinion of the reduction in value was based entirely upon the reduction in the diner's gross sales. He gave the following further testimony:
"Q. Will you explain the difference in price?
A. The difference in price is when I looked at the diner last it had an obstruction from a building and business fell considerably. The business falling off cuts down the value of the diner regardless of the class of the diner and everything else."
Defendant asserts initially that the trial judge erred in his charge to the jury. The court, after stating that the primary issue involved paragraph 24 of the lease, added that the plaintiff's contention was that "notwithstanding the terms and conditions of the lease, the defendant erected a building across the driveway and on a small portion of the demised premises, or premises which are the subject of the lease and as a result he has suffered damage." He left to the jury the determination of the question as to where the driveway was located. He stated that plaintiff's contention was that the building "was built upon the driveway and a small part of it upon the premises demised under the lease." He charged that: "Now, there is nothing in the lease that talks about the right of the tenant to have the premises free from any obstruction cutting off the vision of the wagon." Then, after repeating the respective contentions of the parties as to the location of the driveway and once more calling the attention of the jury to the fact that a small portion of the new gas station actually encroached on the demised premises, he charged as follows:
"Now, if you should determine that the driveway was in the position the plaintiff says it was, then there would be no question that this building had been built upon the driveway in violation of the plaintiff's rights under this agreement. * * * However, if you agree with the defendant's contention as to what that driveway consisted of, then the erection of the building would not be an encroachment upon the driveway, except for the small portion which would be an encroachment upon the actual premises granted under the lease." *48 He then added the following:
"* * * If you should find that the building was not put upon the driveway at all, then, of course, you would not give any damages for encroachment on the driveway. You would have a right to give damages for encroachment upon the part of the premises that were demised." (Emphasis supplied)
Defendant, asserting that neither the pleadings nor the pretrial order raised the issue of damages resulting from an encroachment on the demised premises as distinguished from an encroachment upon the driveway area, objected to the portion of the charge which permitted the jury to award damages for encroachment on the demised premises. It argues that as a consequence of said charge the jury verdict may well have been based upon an issue not properly before the court.
Plaintiff attempts to meet this argument by asserting that the pretrial order included "terms of lease" as an issue; that one of the terms of the lease was a covenant for peaceable enjoyment; that the encroachment on the demised premises was a substantial interference with his possession and therefore constituted a breach of the aforesaid covenant. No such contention was made at the trial.
The basic issue litigated was the location of the driveway. If plaintiff's contention as to its location were upheld by the jury and it found that by erecting the building on the driveway defendant had violated the terms of the lease, the jury would be entitled to award plaintiff, under proper instruction of the court, such damages as proximately resulted therefrom. In so stating we emphasize that it is not to be considered that we are expressing any view as to the proper measure of damages or as to the adequacy of the proofs submitted by plaintiff with reference to his claimed damages.
The significant point is that at no time did plaintiff produce any proof of damages arising from the fact that a portion of defendant's new gasoline station encroached upon the demised premises. He alleged damages arising only by reason of encroachment upon that portion of the alleged *49 driveway upon which defendant had built its new gas station which was beyond the boundaries of the demised premises. Neither was the issue of damages flowing from encroachment on the demised premises "tried by consent or without the objection of the parties" within the provisions of R.R. 4:15-2.
The situation which created the basis of most of the controversy involved in this appeal is centered in the inadequacy of the pretrial order. This case serves to emphasize again the importance of a thorough pretrial conference and the necessity of a precise definition of the issues in the pretrial order. Mead v. Wiley Methodist Episcopal Church, 4 N.J. 200 (1950); Board of Education, Woodbridge Tp. v. Kane Acoustical Co., 51 N.J. Super. 319 (App. Div. 1958).
From the foregoing it is clear that the jury's verdict may have been based, under the challenged portion of the court's charge, upon an element of damages which was not raised by the pleadings, not contained in the pretrial order, nor tried by consent under the provisions of R.R. 4:15-2. It follows that the judgment must be reversed and a new trial granted.
As there must be a new trial we shall discuss two additional grounds for reversal urged by defendant. The first of these is that, during the course of the voir dire examination, plaintiff's attorney asked a juror if he would have any objection to "bringing in a sizeable money verdict in the sum of approximately $40,000.00." The court reporter was not present when this interrogation occurred. Thereafter, and prior to the taking of testimony, the record before us reveals that the following occurred:
"Mr. Griggs: My objection is to the interrogation in the form it took, in that the question asked either Eleven or Ten, sir, I don't know which it was, if the Juror would have any objection to bringing in a sizable money verdict in the sum of approximately $40,000.00, and I submit that is an improper question under the present posture of the law and that, I might add, was made in the presence of nine, I think, seated Jurors, all not sworn.
I want the record to show that.
The Court: All right."
*50 Defendant's counsel in his brief asserts that he made a motion for a mistrial which was denied but the record before us does not record such specific motion or ruling. He contends that the remarks were "prejudicial."
Defendant relies upon Botta v. Brunner, 26 N.J. 82 (1958). It contends in its brief that the "rationale of the Supreme Court's opinion in the Botta case is that in an action seeking a judgment for unliquidated damages, statements by counsel of the type herein complained of tend to `* * * instill in the minds of the jurors impressions, figures and amounts not founded or appearing in the evidence.'"
Initially, it is noted that the rationale of Botta is not limited to statements made during the course of summation. In a case such as Botta statements of the type condemned therein are equally prejudicial if they are made while conducting a voir dire examination, during the course of opening to the jury, or during the course of the trial. However, in Botta the court was dealing with a case involving personal injuries and stated specifically that it was dealing with the question of "the right of plaintiff's counsel in personal injury suits to suggest monetary mathematical formulas to a jury for the computation of compensation for pain and suffering." The court held that it was error to permit the jury's consideration of damages to be awarded for pain and suffering to be invaded by any extraneous, unrelated elements for the admeasurement of such damages.
The principle enunciated in Botta has no application to remarks by counsel in opening and during summation in a case involving a claim for damages to property where the jury is required to consider expert testimony consisting of precise figures based on claimed property damage caused by alleged wrongful acts. The views of experts with reference to such damage may vary. Respective counsel, of necessity, during summation refer to the specific amounts to which the experts have testified. In a more limited way, in opening to the jury they may respectively refer, if they deem it *51 advisable, to the definite amounts of damage to which they know that expert witnesses will testify.
However, we hold that the question here asked had no proper place in connection with the voir dire examination.
The applicable statute is N.J.S. 2A:78-4 which reads:
"Examination of jurors. Upon the trial of any cause, civil or criminal, all parties may, within the discretion of the court, question any person summoned as a juror, after his name is drawn from the box and before he is sworn as a juror, and without the interposition of any challenge, to elicit information for the purpose of determining whether or not to interpose a peremptory challenge, and of disclosing whether or not there is cause for challenge. In all cases in which a death penalty may be imposed, the examination as to competency shall be under oath, but in other cases it shall be made without putting the juror under oath. Such questions shall be permitted for the purpose of disclosing whether or not the juror is qualified, impartial and without interest in the result of the action. The questioning shall be conducted under the supervision and control of the trial judge and in open court."
R.R. 4:48-1 reads:
"The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper."
The above quoted provisions afford no justification for such inquiry of a prospective juror even in a case of the type here involved. The question posed is unrelated to eliciting information pertinent to the objective defined in the statute. It is a pointless question. The scope of a voir dire examination is by statute within the trial court's discretion. As we are obliged, on other grounds, to reverse the judgment herein and grant a new trial as aforesaid, we are not called upon to rule on the claim that such discretion was abused to the prejudice of defendant. However, we desire to record our view of the inappropriate nature of this inquiry to the end that its repetition may be avoided.
*52 We find no merit in defendant's further contention that the trial court erred in refusing to submit to the jury the question of the termination of the lease by reason of the selection of a new site for the new diner, which act defendant contended resulted in plaintiff becoming a tenant at sufferance only. In disposing of this contention it is noted that on direct examination defendant testified as follows with reference to the new diner location:
"Q. As a result of your agreement with Mr. Paradossi, the diner occupies the area which is now portrayed on that map?
A. Yes, sir."
The "Thirty-Second" paragraph of the lease provided as follows:
"* * * It is understood and agreed that should the present diner be replaced, with the consent of the Landlord, the terms and conditions of this lease shall not be effected [sic] thereby but shall continue in full force and effect with relation thereto."
Moreover, in January 1957 plaintiff exercised his option to renew the lease, which action occurred two years after the erection of the new diner in 1954. No protest against such renewal or the propriety of plaintiff's exercise of the option to renew was voiced by defendant.
We have examined other grounds asserted by defendant for reversal of the judgment herein and find no merit in them.
Prior to new trial the parties are to be afforded an opportunity to make such amendments to their pleadings as they may be advised, to be followed by a further pretrial conference and the entry of an amended pretrial order, to the end that the specific bases of plaintiff's claim, defendant's answer thereto, and the issues may be defined. Mead v. Wiley Methodist Episcopal Church, supra (4 N.J. at page 206); Board of Education, Woodbridge Tp. v. Kane Acoustical Co., supra, (51 N.J. Super., at page 324).
For the reasons heretofore stated the judgment in favor of plaintiff is set aside and a new trial granted, costs of this appeal to abide the outcome.