31 N.J. Super. 608 (1954)
107 A.2d 558
VERONICA S. URIAN, PLAINTIFF-RESPONDENT,
v.
THOMAS URIAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided August 23, 1954.
*610 Before Judges EASTWOOD, FREUND and FRANCIS.
Mr. William Reich argued the cause for the plaintiff-respondent.
Mr. Nathan N. Schildkraut argued the cause for the defendant-appellant (Messrs. Kahn & Schildkraut, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this matrimonial cause the wife sought a judgment of separate maintenance. A counterclaim was filed by the husband containing two counts, one for a divorce on the ground of desertion, and the other demanding the return of one-half of certain United States Government bonds allegedly owned by them jointly. The trial court gave judgment to the wife, awarded $35 weekly for her support and a counsel fee of $500 and dismissed both counts of the counterclaim. The husband appeals.
The wife's complaint is lengthy and contains an elaborate recitation of facts relating to the marital discord. It charges the husband with an abandonment without justifiable cause in June 1935 and a failure to support. Then it alleges a *611 resumption of cohabitation six months later and that about September 1941 Urian commenced a course of detailed cruel and inhuman treatment of her which continued until April 1942, when he again abandoned her without justifiable cause and remained away from her until July 1942, at which time he entered military service for a period of approximately twenty-seven months. Upon his discharge in August 1945 they resumed living together. However, it is then alleged that in April 1948 the husband resumed his improper treatment and finally "deserted" her in December 1948. During this separation period he removed all his personal belongings from their apartment and took their automobile, which she had gone to work to help pay for. The complaint continues, asserting that the wife made several attempts to induce the husband to return. Among other things she went through a marriage ceremony in the husband's church, the original ceremony having been performed according to her religious faith. Cohabitation was resumed in June 1950.
It is then alleged that in January 1951 the husband again began a course of "extremely cruel and inhuman" treatment toward her, the cruelty being described. In November 1951, after being assaulted and threatened, she left him. With respect to this leaving the allegation is:
"18. By reason of the long course of extremely cruel and inhuman treatment of the plaintiff at the hands of the defendant, the plaintiff's nerves became completely shattered, she became ill and no longer able to fulfill her duties as a wife, and fearing for her health and personal safety she separated herself from the defendant in the month of November 1951 and established her home separate and apart from him. Plaintiff has been in ill health ever since and under the care of a physician, and her health became impaired to such an extent that she became and still is disabled from earning her livelihood.
19. On the 23rd day of September 1952, the plaintiff, believing that separation by her from the defendant for a period of approximately ten months might have worked a change in the attitude of the defendant towards her, sought out the defendant and asked him to effect a reconciliation with her to the end that they resume marital relations. The defendant refused to effect a reconciliation with the plaintiff. He stated to the plaintiff that he preferred living alone without her and that he would not permit her to return to his home."
*612 Additional general allegations of attempts at reconciliation by the wife and refusals by the husband are set forth. Then it is charged that in November 1951 Urian abandoned his wife and failed and refuses to support her.
The husband filed an even more elaborate factually detailed answer which, exclusive of the counterclaim, covers fifteen pages of the appendix. The counterclaim charges a desertion beginning September 1, 1950 based upon an alleged unjustified refusal to have sexual relations with him.
Thereafter an application for maintenance pendente lite was made. Factually detailed affidavits were submitted on both sides in connection therewith.
Among other things the wife's affidavit, after referring to her attempts at reconciliation in September 1952, recited that "My husband abandoned me on the 23rd day of September 1952, without any justifiable cause, and has failed, neglected and refused ever since that time to provide for my support and maintenance."
The husband's affidavit discussed at length the wife's visit to him on September 23, 1952 and denied that a reconciliation was requested by her. He admitted having received a letter from her dated September 26, 1952 pleading for a reconciliation but said in effect that he did not answer because he did not believe it to be sincere. And he denied an abandonment of his wife on September 23, 1952.
Attached to the wife's moving papers was an additional affidavit of an independent witness, a nephew of Mrs. Urian, which asserted that on November 25, 1952, he visited the husband and endeavored to induce a reconciliation but Urian refused.
Reference is made to the incidents of September and November 1952 primarily for the purpose of demonstrating that Urian was aware of the allegations with respect thereto.
The record discloses that a motion by the husband to dismiss the complaint for lack of jurisdiction in the court and for failure to comply with N.J.S. 2A:34-24 was made returnable on the same day as the pendente lite application. *613 Apparently this motion was made and denied, although the appendix contains no order to that effect.
Specifically the ground for the motion was that under the statute, N.J.S. 2A:34-24, the court does not have jurisdiction in a maintenance action unless the complaint alleges particularly that the abandonment by the husband was "without justifiable cause."
After all of the wife's proof in support of her action had been introduced the motion seems to have been renewed. There was no express ruling thereon but plainly the court intended to permit his original determination to stand.
The evidence in Mrs. Urian's case generally followed the outline set out in the complaint and in the more detailed affidavits. It showed her departure from the marital home in November 1951, following the pursuit of a course of conduct by the husband which she claimed constituted such extreme cruelty as justified her leaving.
She testified particularly that on September 23, 1952, thinking that the ten months of separation might have brought about a change in her husband's attitude, she went to his home and sought a reconciliation. However, he refused, saying he preferred to live alone.
Evidence was introduced also that three days later, on September 26, 1952, she wrote to him, saying:
"I was glad to see you on Tuesday night even though I didn't get a very warm reception.
I guess it was pride that kept me from seeing you before and telling you that I still love you and forgive you. I am willing to forget all that has happened.
As I told you I want to come home. I have been very unhappy since I left. At the time I thought getting out would solve my problems but it did nothing but cause me sleepless nights.
After all Tom, you left me three times and I always was glad to give you another chance, I admit I made a mistake, I hope you will be as generous. If it is up to me, you will never be sorry.
Please let me hear from you."
Further testimony was offered to establish that a nephew of the wife unsuccessfully visited Urian on November 25, 1952, in an effort to bring the parties together.
*614 In defense of the action the husband gave at considerable length his version of their stormy marital life. His wife's proof on the subject of her reconciliation efforts beginning on September 23, 1952 was fully discussed. He admitted the visit but denied that any discussion about her return took place. His statement was that she told him she could get a divorce and he replied that he did not see how, because she had left him. However, she did not say she was going to seek a divorce. When he asked for the purpose of her visit, she said she just wanted to see "what was going on here."
It was admitted that he received the letter of September 26th. No answer was sent because he did not believe the request was sincere. The nephew's visit was conceded also, but Urian said reconciliation was not mentioned. The subject broached was support for his wife, which he declined to discuss, saying that the matter was in the hands of their respective attorneys.
Likewise he conceded that following the November 1951 separation, he made no efforts toward reconciliation because he felt that they would be wasted. In fact after she left he had the lock changed on the entrance door of their apartment so that she could not get in.
At the close of the defense, counsel for the wife moved to amend paragraph 21 of the complaint to read:
"In the month of November 1952, the defendant abandoned the plaintiff without any justifiable cause, has separated himself from her and failed, neglected and refused to provide for her support and maintenance, and he still fails, neglects and refuses to provide for her support and maintenance."
When the motion was made there was no claim of surprise or application for continuance in order to obtain further proof or to enable the husband to meet such allegation. The objection was predicated upon the same ground as was urged for the dismissing of the complaint originally, namely, lack of jurisdiction because of absence of the allegation that the abandonment was without justifiable cause. Undoubtedly this ground was the only one presented because the subject of *615 the abandonment, which began with the wife's effort at reconciliation on September 23, 1952, and which was brought to a head by the nephew's visit of November 25, 1952, was explored completely by both parties at the trial. In any event, decision was reserved on the motion and counsel was given an opportunity to brief the question.
About two months later, on November 23, 1953, the court wrote a short letter to counsel advising them that "Judgment * * * will be for the plaintiff. The counterclaim will be dismissed"; that counsel would be heard at a later date as to allowances, and if an appeal was to be taken a memorandum would be prepared. No mention was made of the application to amend. On January 28, 1954, following the taking of the appeal, an opinion was filed saying that "leave to amend" was granted "although such amendment is not required since the complaint itself alleges facts which disclose the action of defendant was an abandonment without justifiable cause."
On this appeal it is urged that the court had no jurisdiction to entertain the complaint because of the failure to use the statutory words that the abandonment was "without justifiable cause," and also that the amendment should not have been granted because it prejudiced the defense on the merits.
Assuming the existence of a deficiency of the type complained of in the complaint, the problem presented thereby is not one of jurisdiction of the subject matter. Such jurisdiction is the authority of the particular court to hear and determine the controversy sought to be presented by the complaint. Obviously under the statute the Chancery Division has the authority to hear maintenance actions and that authority does not depend upon the sufficiency of the complaint. Defective pleading of the cause of action may justify dismissal of the complaint in a given situation for failure to comply with R.R. 4:8-1 (Grobart v. Society for Establishing Useful Manufactures, 2 N.J. 136 (1949); Brown v. Brown, 2 N.J. 252 (1949); Cohen v. Cohen, 20 N.J. Super. 503 (App. Div. 1952)), but that ground differs from lack of jurisdiction.
*616 An abandonment of a wife may come about when a husband leaves her without justifiable cause and refuses to provide for her support. Or it may arise constructively when the wife separates herself from her husband for a reason which would justify an action for divorce against him. Danzi v. Danzi, 142 N.J. Eq. 662, 671 (E. & A. 1948); Fallon v. Fallon, 111 N.J. Eq. 512, 515 (E. & A. 1932); Cavileer v. Cavileer, 94 N.J. Eq. 160 (E. & A. 1922). In the latter situation, although the physical separation is brought about by the act of the wife, his matrimonial offense transforms her departure into a constructive abandonment by him without justifiable cause.
When a separate maintenance action is predicated upon a constructive abandonment, the facts which metamorphose the wife's leaving into the husband's abandonment must be pleaded to the degree which would be required if the husband's matrimonial offense were being used as a basis for divorce. Cf. Brown v. Brown, supra, 2 N.J. 252 (1949). And when such facts are pleaded they spell out the statutory type of abandonment even though the words "without justifiable cause" are not actually recited in the complaint.
The complaint here, though somewhat rambling and inartistic, pleads a constructive abandonment without justifiable cause in November 1951 based upon the husband's extreme cruelty; it spells out also, although not very clearly, a constructive abandonment without justifiable cause springing from the recital of events surrounding the wife's attempts at reconciliation beginning September 23, 1952.
Under the circumstances we do not think it was error to deny the motion to dismiss the complaint; nor was it error to permit an amendment to add the missing statutory words.
However, the husband contends that prejudicial error was committed in permitting the amendment which changed the asserted date of abandonment relied upon for the cause of action from November 1951 to November 1952.
*617 It is true that a fair reading of the complaint justifies the impression that the pleader was relying upon the November 1951 date and that the subsequent events set forth, namely, those relating to the reconciliation, are merely surplusage. But the fact remains that those events were not only pleaded in the complaint, but were presented again in detail in the wife's affidavits and were specifically charged therein to constitute an abandonment without justifiable cause. The husband dealt with these facts fully in his answer and in his answering affidavits in the pendente lite proceeding. Further, the events beginning with the wife's visit of September 23, 1952 to her husband's apartment through the November 1952 attempt of her nephew to bring about a reconciliation were fully covered by both parties at the trial. The husband met the issue squarely, without objection, and, as already suggested, without any request for adjournment or for further time to produce additional proof. Therefore, while the looseness of the practice pursued in the case is not desirable, we cannot escape the conviction that the matter was fully and fairly tried, and that no prejudice on the merits was suffered by appellant. There is nothing to indicate that remanding of the matter for greater specificity in the the complaint and for retrial would produce any more than what Judge Jayne called a replaying of the same record. Syle v. Freedley, 27 N.J. Super. 461, 468 (App. Div. 1953).
Moreover, we have made an independent study of the record, and as a result we are satisfied that the preponderance of the evidence sustains the view of the trial court that the husband without legal cause rejected the wife's sincere attempts at reconciliation in September 1952 and that as the result of those attempts and the similar effort of her nephew an abandonment came to fruition in November 1952.
Accordingly, no reversible error was committed in granting the amendment or the judgment for separate maintenance.
It is argued strenuously that the judgment should be vacated because, contrary to R.R. 4:53, it was not preceded by a finding of the facts and a statement of conclusions of *618 law, or by an opinion or memorandum stating the facts and the court's opinion as to the controlling law.
The record discloses that on November 23, 1953, the trial court wrote counsel advising that judgment would be entered for the wife and the husband's counterclaim dismissed. The letter indicated that a formal opinion would be filed if an appeal was to be taken.
Thereafter on November 28, 1953 a notice of motion was served to the effect that on December 4th an application would be made for the fixing of the weekly maintenance allowance, of counsel fees, and for the entry of judgment. A copy of the proposed judgment was attached to the notice; apparently it was already dated December 4th on the assumption that it would be signed on that day. However, this was not done as the matter was taken under advisement by the court. It is asserted by counsel for the wife and not disputed by his adversary that the need for filing an opinion or findings of fact and conclusions of law prior to the entry of the judgment was not called to the attention of the court when they appeared on December 4.
In any event, on December 16 the court informed counsel by letter of the allowances and presumably signed the judgment on that day. He did not change the December 4 date because he wished the judgment to be effective as of that date. It was actually filed on December 17.
On December 17 counsel for the husband advised the court of the intention to appeal and requested the preparation of a memorandum. The notice of appeal was served and filed on January 15, 1954 and the memorandum was recorded thirteen days later, on January 28. However, it was included in the appendix and discussed fully in appellant's brief.
The husband contends that the mere fact of filing of the trial court's opinion after judgment in a case where there was no previous statement of factual and legal conclusions requires the vacation of the judgment. We do not agree.
The language of R.R. 4:53-1 seems to direct plainly a factual finding and a statement of conclusions of law or the filing of a memorandum or opinion prior to or contemporaneously *619 with the entry of judgment. The finding or memorandum is not jurisdictional in nature; but it is an important and necessary aid to appellate review.
Our rule is similar to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. In the Federal domain the purpose thereof is said to be threefold: (1) as an aid in the trial court's process of adjudication; (2) to assist in the application of the doctrine of res adjudicata and estoppel by judgment; and (3) as an aid to the appellate court on review. 5 Moore, Federal Practice 2653, par. 52.06 (2d ed. 1951). And the effect of the failure of the trial court to comply with the rule is stated by Moore as follows:
"The failure of the trial court to comply with Rule 52, while characterized as a dereliction of duty, does not demand a reversal `if a full understanding of the questions presented may be had without the aid of separate findings.' * * *." Id. at 2662.
In our judgment the tardy compliance with R.R. 4:53-1 does not vitiate the judgment unless the appellant is prejudiced thereby. Cf. Hurwitz v. Hurwitz, 78 U.S. App. D.C. 66, 136 F.2d 796, 148 A.L.R. 226 (D.C. Cir., 1943); Shellman v. Shellman, 68 App. D.C. 197, 95 F.2d 108 (D.C. Cir., 1938); Hazeltine Corp. v. General Motors Corp., 131 F.2d 34 (3 Cir., 1942); Rossiter v. Vogel, 148 F.2d 292 (2 Cir., 1945); Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Moore, supra at 2663. We find no such harmful result here.
The other grounds for reversal urged by the husband have been examined and found to be without merit.
The judgment is affirmed, with a counsel fee of $250 and costs to respondent.