VIRGINIA HANDELMAN, PLAINTIFF-APPELLANT, v.
HENRY HANDELMAN, DEFENDANT-RESPONDENT.

Argued November 1, 1954—Decided December 6, 1954.

(1)

*Mr. Robert D. Grosman* argued the cause for appellant.

*Mr. Joseph I. Bedell* argued the cause for respondent (*Messrs. Lyness & Bedell,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The appellant instituted an action for separate maintenance in two counts, the first alleging her husband had separated himself from her, that she had lived separate and apart from him with his acquiescence since May 1952, and that he has at all times refused and neglected to maintain and provide for her; the second count charged the appellant was compelled to separate herself from her husband because of his extreme cruelty and as a result, within the meaning of the statute, he abandoned the plaintiff and refused and neglected to maintain and provide for her and her two infant children.

We are in accord with the appellant's view that no useful purpose would be served by a seriatim repetition of the matrimonial offenses or the testimony supporting and denying them. Suffice it to say they were numerous and varied and the evidence offered by the parties was in sharp conflict.

The defendant is an attorney at law of this State and married the appellant on November 15, 1934. They lived together, excepting for a short period of time, until November 12, 1952, when she left him, taking their two children with her. The day before the separation she filed her maintenance action, but she returned to their home with the children in February of 1953.

The acts of cruelty complained of by the appellant seemingly started at the date of their marriage, which proved to be not too successful. As early as June 1937 the husband instituted a suit against his wife on the ground of adultery, which he subsequently abandoned.

All the acts of cruelty alleged were denied and covered in detail by the testimony given, much of which was corroborated.

The court determined "that the plaintiff had not sustained the truth of the allegations of the complaint" and dismissed the action, with prejudice and without costs or counsel fee to either party.

The wife appealed and we certified the cause on our own motion.

She cites seven different reasons for reversal, but the important and noteworthy aspect of the case is that she does not contend her proofs at the trial below sufficiently established an abandonment of her by the defendant either actual or constructive, nor does she assert that the disposition of the trial court was contrary to the weight of the evidence or that on the merits she was improperly denied the relief prayed for. Rather, she asks a reversal based on the court's violation of our court rules and prays her proofs may be completed and a reasonable counsel fee be allowed to her attorney.

■ Upon the filing of the complaint, the appellant obtained an order from a judge other than the trial judge permitting the examination of the defendant on oral depositions as now provided for by *R. R.* 4:16–1.

Subsequently, at the instance of the defendant, an order to show cause was granted requiring the appellant to show cause why the taking of the depositions should not be vacated and the operation of the former order stayed.

The trial court later struck out the interrogatories propounded to the defendant and they were never answered.

The appellant cites *Abbatemarco v. Colton,* 31 *N. J. Super.* 181 (*App. Div.* 1954), to the effect that the right to examine is a "substantial right" and says the action of the trial court excusing the answering of the interrogatories was "capricious and wholly unjustified."

We have no defense to offer for the court below in this respect. The relief prayed for should have been granted, but we are not persuaded that the appellant was prejudiced or suffered harm requiring the judgment entered be vacated or reversed. The present appeal is from final judgment and there is nothing before us to show that if the depositions had been taken there was the slightest possibility that the result would have been otherwise.

■ Error is alleged in that the final judgment was entered *ex parte*, without notice to the plaintiff and without being preceded or accompanied by the court's findings of fact and conclusions of law.

Both parties were notified on March 15, 1954 by letter of the presiding judge who heard the case that judgment would be entered dismissing the complaint. Final judgment was entered on March 16. The final hearing in the cause had been held on December 22, 1953 and at the conclusion thereof the court asked counsel to submit "his observations" on the issues involved "as early as possible." The plaintiff's attorney stated: "I will have to ask your indulgence, your Honor, because I think this thing ought to be settled and disposed of in the meantime."

The affidavit of defendant's counsel shows he inquired of the court several times during the months of February and March 1954 as to when the decision could be expected and was advised that the court was still waiting for the brief from the plaintiff's attorney.

The brief was never filed before the decision made in the letter of March 15, 1954, this despite the fact that the trial judge was to reach the compulsory retirement age on March 17, 1954 and the plaintiff's attorney had been warned to this effect in the course of the hearing on December 21, 1953 and was fully cognizant of the difficulties encountered. Having delayed for nearly three months, with full knowledge of the approaching deadline, the failure to comply with the rule was not due to the fault of the defendant or of the court but was mainly attributable to the procrastination of the appellant under the peculiar and exceptional circumstances existing.

Although tardy compliance with *R. R.* 4:53–1 is condemned, it does not vitiate the judgment unless the appellant is prejudiced thereby. *Urian v. Urian,* 31 *N. J. Super.* 608 (*App. Div.* 1954). *Cf. Testut v. Testut,* 32 *N. J. Super.* 95 (*App. Div.* 1954), following *Jaeger v. Jaeger,* unreported, decided April 15, 1954.

Nor is the result changed because the opinion was filed after the judge reached the constitutional age of retirement. Appeals are from judgments and not from opinions and the judgment here was actually rendered while the judge was still qualified. It recited, amongst other things, that if an

appeal was to be taken "a memorandum will be prepared for the record."

■■ Even assuming the appellant had not made out a *prima facie* case for separate maintenance, she nevertheless claims she was entitled to an allowance for her children and to a reasonable counsel fee to prosecute her action.

These allowances, when made, are usually predicated upon the circumstance frequently encountered where a wife has no independent means to support herself or to enforce her marital rights where the marriage has foundered and husband and wife have separated. Here, however, when the application for alimony *pendente lite*, counsel fees and suit money was made, the court, upon the facts presented by affidavit of the parties, found the plaintiff was not in necessitous circumstances, the family home was available to the appellant and her children and the defendant had provided for their maintenance.

This finding is supported by the record. The appellant, as late as September 18, 1953, less than two months before the complaint was filed, withdrew $5,000 from a building and loan association, but this fact is sought to be minimized because "she had an uncontrollable passion for gambling."

We think the conclusion reached by the trial court was in accord with the record and see no abuse of discretion in withholding the allowance asked for under the circumstances.

■■ The court, it is advanced, wrongfully denied the plaintiff's motion to amend her complaint.

The amendments were not proposed until December 1953, more than a year after the original complaint was filed and six months after the first hearings were held. The first amendment sought to add new charges of cruelty alleged to have occurred after the complaint was filed. The second was to add a charge of adultery by way of supplement to the complaint.

The first amendment, if allowed, would have been merely cumulative in effect. There were many and ample charges of cruelty in the original complaint to entitle the plaintiff to judgment had they been proved. Abundant opportunity was

afforded the plaintiff at the hearing to show that the defendant's treatment of her had been such as to impair her health and endanger her safety, if such had been the case.

Permitting amendments under *R. R.* 4:15–1 is discretionary with the court, and the rule requires that leave to amend "shall be freely given when justice so requires." Here a long time had elapsed after the filing of the complaint and the taking of the testimony of the plaintiff and other witnesses before the amendment was proposed, and the record is not persuasive that injustice was done to the plaintiff by the denial of the belated motion.

Additionally, the court's ruling in the memo letter denying support *pendente lite* held: "Any acts of cruelty which occurred may be shown to lend character to the acts complained of as a basis for the separation * * *." This in substance rather than in form gave the wife the relief she sought had her proposed amendment come within the qualification of the ruling made.

On December 21, 1953, at the continuation of the cause, when counsel renewed his application for leave to amend the complaint, the court inquired whether he had "a prepared amendment that I can look over," but no such amendment had been drawn and therefore could not be submitted for the court's consideration.

The second offered amendment was that the defendant did, sometime in February or March 1953, "commit adultery with a person or persons whose identity is unknown to the plaintiff, in the State of Florida or in the Island of Cuba, at a place and time unknown to this plaintiff."

This charge is so vague and indefinite as to be patently within the sound discretion of the court as to whether it should be permitted as an amendment to the pleadings.

It is charged the trial judge "proved temperamental and emotionally unstable to the point where his actions interfered with the proper trial of the cause."

The court on a few occasions made uncalled-for disparaging comments about the quality of the evidence adduced by the plaintiff; but the case was not being tried before a

jury and no one was unduly or improperly influenced by the court's observation which reflected his concept of the proffered testimony. His oral evaluation of the unimpressiveness of the plaintiff's cause intimated his mental reaction and should have been of assistance to the plaintiff as a warning that the tendered proof had not the required depth to prevail upon the trier of the facts.

The remarks had no prejudicial effect, however, except as they indicated the unfavorable reception of the pending cause by reason of a lack of conviction from the proofs submitted.

█ It is next asserted the trial court should have allowed proof of failure to support prior to proving abandonment by the defendant.

The order of proof is discretionary with the court. In order to sustain the allegations of the complaint, the appellant had to prove abandonment as well as failure to support, and it is immaterial whether the court insisted on an orderly arrangement of proving one fact at a time or allowed the proofs on both points to be intermingled. The matter was wholly within the discretion of the court and we see no abuse of his suggested method of procedure.

█ Finally, it is urged by the appellant that the court unduly prejudiced her rights by insisting, on the final day of the trial, that the hearing continue beyond four o'clock in the afternoon. *R. R.* 1:28–1 is relied upon:

"Court Hours. The Supreme Court, the Superior Court, the county courts and the district courts shall sit from 10 A. M. to 1 P. M. and from 2 P. M. to 4 P. M., unless the Chief Justice shall order otherwise."

At 10 minutes to 6 on the final afternoon, plaintiff's counsel suggested adjourning for the day. The court granted a recess for dinner but refused the request and directed a continuation of the hearing an hour later. The trial then went on until sometime between 8 and 9 o'clock of the same evening. This, it is claimed, unduly exhausted the plaintiff's counsel and constituted "an absolute abuse of discretion which should be denounced in most emphatic terms."

There is no doubt from the record that the trial judge hurried this case to a conclusion, occasioned by his realization of his compulsory retirement at the statutory age, which was not far off; but the mere trespass upon the rule above set forth does not of itself show that the appellant was prejudiced.

These dispositions are all made based on the background of the record presented to us, asking relief not on the merits or the equities of the cause as they prevailed but primarily and solely on the basis that there were technical violations of the rules. Had they proven prejudicial, a correction would have been called for, but this is not even asserted.

As we have already noted, the appellant's entire argument is based upon an alleged departure from or an infraction of the rules in the trial court. The merits and the integrity of the cause are ignored completely. In our opinion we must direct our consideration to whether or not the appellant was substantially prejudiced by the violations complained of and by the manner and way in which the hearings were conducted.

The rules of procedure were not designed to create an injustice and added complications but, on the contrary, were devised and promulgated for the purpose of promoting reasonable uniformity in the expeditious and even administration of justice. This overriding design is succinctly stated in *R. R.* 1:27A:

"The rules applicable to any court shall be considered as general rules for the government of the court and the conduct of causes; and as the design of them is to facilitate business and advance justice, they may be relaxed or dispensed with by the court in any instance where it shall be manifest to the court that a strict adherence to them will work surprise or injustice."

In *Tumarkin v. Friedman*, 17 *N. J. Super.* 20 (*App. Div.* 1951), it was expressed thusly:

"Procedural rules should not in themselves be the source of any extensive litigation; they should be subordinated to their true role, *i. e.*, simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits."

The general purpose of the rules is to broaden the procedural powers of our courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided. *Board of Commissioners of City of Newark v. Inlander*, 7 *N. J. Super.* 192 (*App. Div.* 1950).

The Chief Justice expressed a similar thought in *Milk Drivers & Dairy Employees v. Shore Dairies*, 8 *N. J.* 32 (1951):

> "The design of our rules of court is to facilitate business and advance justice, to make practice just and simple, and prevent unreasonable delay and expense * * * and it is the duty of all judges to see that these salutary objectives are not perverted."

The record does not indicate any abuse of discretion which goes to the merits of the issues involved or where the rulings prevailed to the prejudice of the aggrieved party. Considering the cause as a whole, we see nothing sufficient to warrant us in setting aside the judgment as requested.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.